All right, each side has 10 minutes in this matter, and you may proceed. Good morning. Good morning. May it please the Court, Molly Briscus here on behalf of the Appellant Defendant Michael Earl Yellow. I'll try to reserve two minutes for rebuttal. Mr. Yellow brought several challenges to his above-guideline term of supervised release, as well as several of the— Is that better, Your Honor? Yes. Okay. Mr. Yellow brought several challenges to his above-guideline term of supervised release, as well as several of the special sex offender conditions that the District Court imposed on him. We raised a procedural challenge to the 10-year term of supervised release, and I'd like to talk a little bit about that. In giving his reasoning, the District Court said that he was giving a double term of supervised release in this case because of the need for sex offender treatment, so that 10-year term is warranted to give you enough— me enough time to confirm that you're currently attending to everything. This was an arbitrary sentence without any factual basis in the record. There was nothing offered that sex offender treatment would take remotely as long as 10 years or anywhere near that. In addition, it was substantively unreasonable because the District Court relied to a great extent on a 25-year-old sex offender or sex offense the defendant had committed 25 years in the past. And this defendant, although the government argues that he has an abysmal record on supervised release, he has not had any new sex offense, any new offense whatsoever that involves a victim or any sexually deviant behavior. Well, you kind of have to look at the whole scheme work in sexual offense cases because there isn't really any— you know, the whole way that they approach it is that pedophiles don't get better. And so that's why they have lifelong registration. And so whether you have another offense or not, that's why even a lot of people, you know, think like, okay, failure to register, that's not nearly as bad as, you know, offending, you know, committing another offense with a minor. But the problem is the whole thought process between lifetime registration is if you don't know where they are, if you can't identify these people, if you don't know what they're doing, then society's at risk. So you're kind of pushing—there's an avalanche of case law against you on the constitutionality of, you know, holding people, you know, under 290 registration and all of that. That's not good for you. I understand that, Your Honor. But I think that there's a difference between not registering and committing new sex offenses. And I think that— But if people don't register, we don't even know where they are, and sometimes you don't even know whether they are doing anything unless someone reports it. So it's a little bit of a circular argument, but it's not one that generally fares well in the courts for offenders. Okay. Well, let me turn to— I mean, people can actually in California sometimes can get a life sentence for failure to register, depending on what their prior record is. Well, Your Honor, let me turn to the sex offender conditions, because even for a sex offender who has failed to register, still under the statute 3583D, you still have to—those conditions still have to relate to goals of deterrence or rehabilitation of the defendant or protection of the public. That doesn't change just because this is a sex offense. And if you look at those conditions, when something is 25 years old, that reasoning collapses, because the statutory reasons of protecting the public or rehabilitating the defendant, those conditions may have served those purposes 25 years ago, but they don't necessarily serve—they can't be justified 25 years later, because perhaps, you know, the defendant doesn't need to be rehabilitated under the same sort of plan. Or perhaps the protection of the public, that has diminished over time, because the defendant has gotten older or has gotten—you know, has a different circumstance. Getting older as a pedophile doesn't stop them. We have people in their 80s that continue to be pedophiles. That's—as opposed to rapists, that's sometimes of adults. But let me ask you this, in terms of what the court told him that you're talking about, that it needed to be more specific. And in the cases that talk about this, in your case, if I understand the record correctly, your client does not have any children, so he doesn't run the risk of, if he has contact with his own children, that that would be an offense. Am I correct on that? That's correct, Your Honor. All right. And he was determined a sex offender some, what, 23 years ago or something? I mean, he was convicted of a sex offense. So in terms of his employment, I am assuming he's not currently holding a job where he's working and would have contact with children. No, Your Honor. That's correct. So I'm just wondering, you know, the sky is falling and that he's going to— the no-contact condition is going to be covering inadvertent contacts. Don't those facts and United States v. Solterra kind of protect him from that situation? Well, Soterra predated Wolfchild, which I think is the more important precedent in this realm, that really went through with a fine-tooth comb conditions exactly like this and unpacked them and really held the district court to the fire in terms of what kind of findings they have to make before ordering such broad conditions. And in Soterra, those conditions were on the original sex offense. So even if this court were to not rule that this condition was unconstitutionally overbroad or vague, in this instance it's completely different from Soterra because Soterra was the original sex offense that those conditions were tied to. These sex offender conditions are tied to a 25-year-old offense. And, you know, the defendant has been in prison for a lot of that time, and he has been living in the remote part of the Navajo Nation and is homeless. But there's not a black hole where he's out there committing crimes that we don't know about. Crimes are prosecuted in federal prisons all the time for sexual offenses, and sexual offenses are reported on the reservation routinely and prosecuted either by tribal police or the federal government. So he can't prove a negative, but in this 25-year period, he has no new sexual offenses or any sort of offenses against another person. He has Class C violations, which in the commission's terms, call them technical violations for failure to report. That is all. And he has done over the course of since he has been on supervised release, he has done almost 60 months on those technical violations, and he will never be able to come to this court and argue that those sentences are unreasonable because by the time they reach his short sentences, by the time they reach the appellate court, it's moot because he has served his sentence. But I think this court should consider that he has done over the lifetime of his supervised release 60 months on technical violations, and that's separate. Yes, sorry. Okay. I will. Thank you. Good morning. Good morning. Rachel Hernandez on behalf of the United States. The sentence imposed here for the defendant's repeated breaches of the court's trust were reasonable and not an abuse of discretion. What you have here is a person who does have an abysmal record and has remained in the community untreated, unrepentant, has not checked in with probation, has multiple violations for these things. And, in fact, to answer a question that Your Honor had, he's not currently working. He's currently in custody on failure to register charges in Utah. Okay. But, you know, giving him the benefit of what are his best arguments, Mr. Yellow was convicted of a sex offense in 1994. There's no evidence before this court that he has any inappropriate contacts with children since then. So why doesn't United States v. TM apply? In TM, the court found that where the defendant had lived the last 20 years without committing a sex offense, the sex offender conditions did not have a reasonable relationship with deterrence, public protection, and rehabilitation. Well, I would say TM doesn't apply for a few reasons. First of all, here, in TM, I think the court said, yes, an outdated conviction without more is insufficient. But here you have a couple of things. He has not, during the time since his original conviction to now, he has spent 20 years in custody, a year and a half or more as a fugitive, and then the rest of the time trying to get through supervised release. So this is not a case that has without more. There's more here. And the more here is he has a new conviction for failure to register. And that case, the case we're here on, his second supervised release, was sentenced in 2012. And in 2012, in the original sentence for this case, these sex offender conditions were deemed necessary and relevant and were imposed. To that argument, he'd say, sure, I failed to register, but I haven't had another inappropriate contact with a minor. Well, I would point to what Your Honor was saying and also this court's decision in Williams that discusses in great detail the need for these types of conditions in these types of cases. I'm not suggesting it's not necessary, but I'm suggesting that he would argue that there's a substantial difference between the two. Between a sex offense and a... Committing an offense and failing to register. Of course, there is, of course, there's a difference. But the courts have held that these conditions are appropriate. When you're dealing with somebody given this history, I mean, essentially failure to register was a term of his supervised release in the original case. Well, your opponent would answer that by saying we don't know what he's done or what he hasn't done because he didn't register. That's what I assume she'd say. So we don't know that he hasn't offended. We just know he hasn't been charged with offending. Isn't that pretty much... Well, that's right, and that's what I would say. And that's why these conditions are necessary. That's why we have the courts have held that the sex offender conditions, the requirement to check in, that's why the statute for this crime permits lifetime supervision. You know what I wonder, and I'm not suggesting we're going to make that the rule, but I suspect the nature of the offense and the facts of the first offense, let's assume it's only one offense, will have some determination as to what should be an appropriate remedy. And in this case, on these facts, I guess you'd say it's appropriate to say lifetime. But we didn't say lifetime, so we said 10 years, and we can't say if you think lifetime is appropriate, then 10 years is certainly arguably less than lifetime. Well, I would say that exactly. The sentence here is reasonable. The district court said if I'm making a mistake here, I'm erring on the side of too light of a sentence, given the 3583 factors, the nature and circumstances of this defendant and his history of a brutal molestation of a 13-year-old, his four supervised release violations in that case, his new conviction in this case, and his two supervised release violations in this case. And so I agree with what Your Honor is suggesting, which is on these facts in this case where this defendant has adult children, where the soltero clarifies what is meant by the condition of no contact with minors, I think on these facts the court should affirm. If the definition, what are the definitions of in the company of and contact that we should apply to interpret the no contact condition? The definition of contact is exactly what the court said, that it is, I'm sorry, that the court said it's not incidental contact and that it's not passing somebody in the streets, passing somebody on the sidewalk. I think in the opening brief they said, you know, buying Girl Scout cookies. To that I would say if a Girl Scout rings your doorbell, that's not, that's inadvertent contact. If you put up a sign or you put a notice in the community paper saying, hey, I'm looking to buy Girl Scout cookies, or you go to a Girl Scout meeting, that's not incidental contact. Additionally, the question of contact with family members, again, he has adult children. There's a provision in the condition that says without prior approval. If he wants to go to a grandchild's birthday party, he can seek approval, and maybe the probation. I think they're going to argue to strongly appoint family members because the problem here was with a family member, so. Right, I think it was a relation of some degree.  The government added the condition knowingly contacting, knowing contact with minors, which makes it clear. Okay. Thank you. No additional questions. Thank you. Don't we have a problem that this court can't solve? I don't know where he'd make whatever showing he needs to make, but we have to look at the record, and what is the legal question before us in your view? The legal question is whether the district court made a procedural error when coming at this sentence and whether the sentence is substantively unreasonable. That goes to the 10-year term of supervised release. And then looking at the conditions, whether the district court abused its discretion when putting a myriad of sex offender conditions as well as an overbroad condition on this defendant. So I think there's one question as to the length of the sentence and one about the conditions of the sentence. Counsel, so one question I had, and the government has not made it, but it's something that resonates in my head, is that we have someone who at the time committed, I think we can all agree, a very bad offense, and that the terms of supervised release, had they been put in place then, may be appropriate. And I understand, I'm asking you to agree with that, but that's one way to look at this case. Now, it was 25 years ago. But during that time period, he has not done a good job on supervised release. And isn't there a policy argument made that if someone is a sex offender and they do a very, very bad job on supervised release, that the reward should not be, well, the strict terms don't apply to me because it was 25 years ago. Shouldn't the policy argument be, well, maybe we can talk about getting rid of those terms if you've been good on supervised release, but you've been really bad. So the policy is not to take those terms away, to be putting even harsher ones on. Why isn't that the way to look at this case? Well, I think we can't look at it whether harsh or not harsh. We have to look at each individual defendant and each individual sentence. And when the district court is fashioning a sentence, you make a sentence that's appropriate for that person. Not using blanket terms or boilerplate provisions based on things that may or may not have happened in the past. And if you look at congressional intent on the purpose of supervised release, it's to get someone to reenter society and be a law-abiding person. And so I think in this case, perhaps those conditions don't make sense for this defendant at this time, but other more onerous conditions perhaps do to redress the actual problems that this defendant faced as a homeless man in a remote part of the Navajo Nation. That we're kind of putting on these one-size-fits-all sex offender conditions tethered to something that happened in the past, but perhaps this defendant needs a different kind of different conditions that are more carefully tailored to his issues for not checking in, not being supervised, that sort of thing. All right, thank you for your argument. Your time has expired. And I'm not suggesting that this is going to ever be required, but quite often when you ask for change, you have some expert who's saying you can function well with the change. And we don't have any of that in this record, do we? We don't have anything other than Mr. Yellow's laws. That's true, Your Honor. And now I only suggest that so that if he's so cured, then you'll have a clue as to what he might do to change. And the court hasn't ruled, and I haven't made up my mind, but we're going to consider the argument. But you have to be concerned with the individual, and if you are concerned with him, then you might want to help him. And one of the ways to help him, if he needs professional help, is to help him get it. Absolutely, Your Honor. Of course, that won't be our requirement. We don't have the authority to require it. But as somebody who cares about him, that's something you might want to carry back to him. Thank you. Thank you, Your Honors. Thank you both for your arguments in this matter. That was helpful. All right, the three remaining cases on calendar, Vivian Wright Bolton v. Melanie Andres, Rhett Bryce Dunlap v. United States of America, Kenneth Day v. LSI, all of those cases were submitted on the briefs, and they will be submitted as of this date. This court is in recess for the week. All rise. The score for this settlement stands adjourned.
judges: Farris, Callahan, Owens